IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

REBECCA LYNN ANDERSON,

                              Plaintiff,                      OPINION AND ORDER

    v.

                                                              08-cv-82-slc

STATE OF WISCONSIN DEPARTMENT OF
HEALTH AND FAMILY SERVICES and
KATHLEEN BAILEY EMMERTON, individually
and in her official capacity as Chief of the Estate
Recovery Section of the Bureau of Health Care
Systems and Operations, Division of Health Care
Financing in the State of Wisconsin Department
of Health and Family Services,

                              Defendants.

---

       This is a civil action for monetary, declaratory and equitable relief under 42 U.S.C. § 1983. Plaintiff Rebecca Lynn Anderson contends that defendant Kathleen Emmerton retaliated against her in various ways for exercising her rights to freedom of speech and to file grievances, in violation of her constitutional rights under the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Plaintiff also contends that defendant Emmerton's actions as an agent of defendant Department of Health and Family Services violated her rights under Wisconsin's whistle blower law, Wis. Stat. § 230.90 (formerly § 895.65). This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. On May 14, 2008, the parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

       Before the court is defendants' motion for summary judgment on all claims. Dkt. 17. Pursuant to the Supreme Court's recent decision in *Enquist v. Oregon Dept. of Agr.*, ___ U.S. ___, 128 S. Ct. 2146 (Jun. 9, 2008), plaintiff has withdrawn her equal protection claim. Because I

conclude that plaintiff has not adduced sufficient evidence from which a trier of fact could find that her complaints about her supervisor were protected under either the First Amendment or the state whistle blower statute, I am granting summary judgment in favor of the defendants.

Before finding the facts, I note that defendants repeatedly raised hearsay objections to plaintiff's proposed findings of fact and her responses to defendants' proposed findings of fact. For example, each time plaintiff proposed a fact regarding a conversation she had with another person, defendants declared that the fact was "hearsay and may not be offered for the truth of the propositions asserted."  This point is correct as far as it goes.  *See* Fed. R. Ev. 801©). However, in many instances, plaintiff was not offering the conversations for their truth, but only to show that certain statements were made to her and how they affected her.  If a witness has personal knowledge of the third party's statements and if it does not matter for purposes of deciding this motion whether these statements were true, then the witness may testify about what the third party said.

Second, the parties propose findings of fact, many of which are disputed, regarding plaintiff's work performance and defendant Emmerton's actions and intent toward plaintiff.  I have only briefly summarized the facts regarding these matters because they are not material to deciding whether plaintiff's speech was protected under either the First Amendment or the Wisconsin Whistleblower Act.  Disputes over immaterial facts will not prevent summary judgement.  *See Jones v. Union Pacific R. Co.*, 302 F.3d 735, 744 n.7 (7th Cir. 2002).

For the purpose of deciding this motion, I find from the parties' proposed findings of fact that there is no genuine issue with respect to the following material facts.

UNDISPUTED FACTS

Plaintiff Rebecca Anderson was employed as a collections specialist in the Estate Recovery Program at the Wisconsin Department of Health and Family Services from January 6, 2003 to February 16, 2006. She was the only collections specialist assigned to process transfers of estates by affidavit; all other collections specialists handled real estate matters. Plaintiff's job description stated that she had responsibility, under the section chief, for researching, developing, operating and improving the estate recovery program. Her duties included participating in program planning and policy setting, developing procedures and coordinating "transfer by affidavit probate (claim) processing to ensure" that various government programs received the fullest amount practicable.

Defendant Kathleen Emmerton was the chief of the Estate Recovery Section of the Bureau of Health Care Systems and Operations in the Division of Health Care Financing at defendant Department of Health and Family Services (now known as the Department of Health Services). She was plaintiff's supervisor.

Ken Dybevik was the Director of the Bureau of Health Care Systems and Operations between February 1, 1998 and December 2007. At all times relevant to this action, he was Emmerton's direct supervisor.

Soon after plaintiff started in her position, problems arose. After two or three months on the job, plaintiff asked Loralee Maglio, the collections specialist-lead worker, not to talk to her about other employees behind their backs. Following that conversation, Maglio and Emmerton began criticizing plaintiff's work and supervising her in a negative manner. Plaintiff found Emmerton to be an abusive supervisor who supervised her too closely, micro-managed her

3

work and provided conflicting, contradictory and excessive criticism and nit-picking. Emmerton, for her part, found plaintiff difficult to train, unable to use the resources provided to her and incapable of completing all of her job duties.

Tina Triggs initially was responsible for training plaintiff and reviewing her work. In May 2003, Emmerton assigned Maglio to train plaintiff because Triggs had told her that plaintiff was not following instructions or the notes and procedures provided to her. At some point, Emmerton told Dybevik about plaintiff's backlog of work.

Plaintiff told Emmerton and Maglio that she had a heavy workload and an increasing backlog of work. In May 2003, plaintiff told Dybevik that she was concerned about the way that Emmerton and Maglio were treating her. She reported that Emmerton and Maglio excessively criticized her and supervised her in an unfair, demeaning, sarcastic and hostile manner. Plaintiff also informed Dybevik that Emmerton often smelled of alcohol and seemed hung over and this was when she was most abusive. She renewed these complaints to Dybevik from time to time over the next year, but he never acted on them. Plaintiff noticed that every time that she complained to Dybevik, Emmerton became more critical and hostile toward her.

While Emmerton was on medical leave from June 24, 2003 through July 21, 2003, plaintiff's 6-month probation review became due. Because no performance issues were formally written up, plaintiff automatically passed probation on July 5, 2003. Almost a year later, on June 17, 2004, plaintiff signed a performance, planning and development (PPD) report evaluating her job performance as "satisfactory" between January 6 and July 6, 2003. Once an employee passes probation, performance evaluations are performed annually.

Around March or April 2004, plaintiff consulted with Janis Wrich in the Employee Assistance Program (EAP) about Emmerton's abusive treatment.  In June 2004, Emmerton met with Stacy Davidsaver, an employment relations specialist in the Bureau of Human Resources, to discuss her concerns regarding plaintiff's performance.  Davidsaver advised Emmerton to evaluate plaintiff on a monthly basis and, if this did not improve plaintiff's performance, place plaintiff in a concentrated performance planning and development (CCPD) program.

On June 17, 2004, plaintiff received her first annual PPD, in which Emmerton rated her performance as "unsatisfactory."  Plaintiff responded to the PPD in writing:

> From July 1, 2003 through June 17, 2004, I have not received proper training from [my supervisor] and I did not receive in writing any performance problems.
>
> I also believe that I am being singled out from the rest of my section whereby policies, procedures, and work rules are not implemented on a consistent fair basis.
>
> I have worked for the state for 12 years and in this time I have never received an unsatisfactory performance review.
>
> There is one other Collection Specialist in my section that has expressed to me and my supervisor that they need more work.  My workload is ten times the amount that they have and my supervisor refuses to participate in easing the workload.
>
> I am feeling harassed by my supervisor.  On several occasions she has been loud in my cubicle stating 'you should know this by now' etc. . . .   She has also physically pushed me as if she was joking around with me which was not the case.
>
> During this time I have not been given training on a consistent basis.
>
> I do not agree with this PPD and will continue to seek out legal and professional advice as to the harassment and mistreatment I have received from my supervisor.

Plaintiff provided copies of the response to Dybevik and her union but never received a response from Emmerton or Dybevik.

On or about July 20, 2004, plaintiff filed a complaint with the Department's Affirmative Action/Civil Rights Compliance Office, alleging the following:

- Emmerton and Maglio created a hostile atmosphere in the workplace for her.

- In February or March 2004, Emmerton jabbed her finger within 2-3 inches of her face.

- In June 2004, Emmerton shoved or grabbed her shoulder.

- Emmerton pounded her fingers on plaintiff's desk in a menacing way while "castigating" her.

- Emmerton often smelled of alcohol and appeared hung over at work and as a result, acted abusively toward her and other employees.

- Maglio criticized her work unfairly and excessively.

- Emmerton and Maglio did not authorize necessary training for her.

- Emmerton retaliated against her with more severe criticism and excessive work assignments because she complained to Dybevik.

Marcus Miles, the Affirmative Action Officer, investigated plaintiff's claims. On July 29, 2004, he concluded that the claims were unsubstantiated. Plaintiff complained to Miles's supervisor that Miles had not investigated the right person and had failed to interview key witnesses. The supervisor told plaintiff that it did not matter because it was her performance that was at issue.

Emmerton met with plaintiff on July 16, 2004 to discuss the new planning PPD. Plaintiff had requested that a union steward attend the meeting. On August 4, 2004, Thomas

6

Smith, the union steward, contacted Emmerton about concerns that he and plaintiff had regarding her PPD. Later that month, plaintiff, Emmerton, Dybevik, Smith and William Franks, the senior steward for the American Federation of Teachers-Wisconsin Local 4848, met to discuss plaintiff's affirmative action complaint, her monthly PPDs and the union's knowledge that Emmerton reported to work under the influence of alcohol. Franks stated that the union was concerned on behalf of the employees in the estate recovery program because Emmerton reeked of alcohol on numerous occasions and behaved abusively toward employees. He became involved because the union felt that plaintiff's complaints echoed concerns that other union members in the estate recovery program had expressed. Following that meeting, Dybevik and others met with Emmerton on a few occasions to discuss her smelling of alcohol at work.

Over the next several months Emmerton had monthly PPD meetings with plaintiff; she continued to rank plaintiff's work performance as unsatisfactory. Given the increased tension in the Estate Recovery Section, Dybevik organized a conflict resolution session, which took place on January 19, 2005. Davidsaver and Smith observed the session. After identifying problems in the workplace, the group developed an action plan addressing interpersonal relations, work distribution, accountability, performance issues, attitudes, consistency, management styles, cross training and policies and procedures.

On January 26, 2005, the union filed a grievance on plaintiff's behalf, alleging that her monthly PPDs violated the collective bargaining agreement. Specifically, the grievance stated that:

> For the past several months the employee has been having monthly PPD sessions with her supervisor. Although the supervisor denied that the employee is on a Concentrated Performance Evaluation (CPE), the supervisor continues to use threatening language in

> these sessions. The employee finds this intimidating and believes it borders on harassment. Further, no other employee under this supervisor has a monthly PPD session. Therefore, the employee believes that work rules are not being administered uniformly. The employee is being held to stricter standards [than] other employees in the same classification.

On April 7, 2005, Davidsaver denied the grievance on behalf of the department.

On April 25, 2005, plaintiff was informed that the department would be recommending a formal CPPD process. After plaintiff was given an opportunity to respond, she was informed that a CPPD, providing for increased supervision and reviews, would be implemented beginning May 9, 2005. Around this time, plaintiff wrote an e-mail to United States Congresswoman Tammy Baldwin, complaining that Emmerton was singling her out for retaliatory treatment because of her complaints about mismanagement and abuse. In a letter dated May 9, 2005, Congresswoman Baldwin thanked plaintiff for "asking for assistance with [her] State of Wisconsin employment concerns" and referred plaintiff's complaint to State Senator Mark Miller because it involved a state agency.[1] On the same day, Congresswoman Baldwin sent a letter to Senator Miller, indicating that plaintiff was having "difficulties with her supervisor."[2]

In May 2005, plaintiff filed a whistle blower complaint with the Equal Rights Division of the Department of Workforce Development, alleging that Emmerton instituted the CPPD in retaliation for plaintiff's various complaints against her. She specifically mentioned that she had filed an affirmative action complaint that "her supervisor was physically threatening and under the influence of alcohol."

---

[1] This fact is drawn directly from the text of the letter, which was attached as an exhibit to plaintiff's affidavit, dkt. 34, exh. B at 3.

[2] This fact is drawn directly from the text of the letter, which was attached as an exhibit to plaintiff's affidavit, dkt. 34, exh. B at 4.

Emmerton conducted six CPPD review meetings with plaintiff between May 2005 and January 2006. In a letter dated February 6, 2006, Emmerton informed plaintiff that the division was recommending her termination because of her "continued failure to attain minimally acceptable performance." On February 8, plaintiff was placed on administrative leave. She was terminated from her employment, effective February 16, 2006.

ANALYSIS

**I. Summary Judgment Standard**

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 322-23 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, in order to avoid summary judgment, the non-moving party must supply sufficient evidence for each essential element of its case to allow a reasonable jury to render a verdict in his favor. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007); *Sanchez v. Henderson*, 188 F.3d 740, 743 (7th Cir. 1999). The mere existence of some alleged factual dispute is insufficient to defeat a properly supported motion for summary judgment. *Liu v. T & H Machine, Inc.*, 191 F.3d 790, 796 (7th Cir. 1999). "Factual disputes are 'material' only when they 'might affect the outcome of the suit under the governing law.'" *Borcky v. Maytag Corp.*, 248 F.3d 691, 695 (7th Cir. 2001) (quoting *Oest v. Il. Dept. of Corrections*, 240 F.3d 605, 610 (7th Cir. 2001)).

**II. First Amendment Claim**

The First Amendment protects a public employee's right in certain circumstances to speak as a citizen addressing matters of public concern. *Houskins v. Sheahan*, 549 F.3d 480, 489 (7th Cir. 2008) (quoting *Morales v. Jones*, 494 F.3d 590, 595 (7th Cir. 2007)). Plaintiff contends that Emmerton retaliated against her for complaining to Dybevik, union representatives, the employee assistance program, the DHFS affirmative action office, the Equal Rights Division, Congresswoman Baldwin and State Senator Miller. Defendants assert that plaintiff did not speak in any instance "as a citizen" and, even if she did, her speech did not address a matter of public concern.

**A. Citizen or Public Official?**

Until recently, the determination whether an employee's speech was constitutionally protected began with the question whether it touched on a matter of "public concern." *Spiegla v. Hull* (*Spiegla I*), 371 F.3d 928, 935 (7th Cir. 2004); *see also Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) (setting forth framework for First Amendment retaliation claims). In 2006, the Supreme Court significantly narrowed this right, holding that the First Amendment did not protect statements made by employees "pursuant to their official duties." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Therefore, regardless of the subject of the speech or how important it is, public employees cannot sue for retaliation under the First Amendment unless they are "speaking as citizens" rather than "pursuant to their official duties," *id.* at 1959-60. The Court explained that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as

10

a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.*

It is not yet clear where to draw the line between speech made pursuant to an official duty and speech made as a citizen. *Haka v. Lincoln County*, 533 F. Supp. 2d 895, 918 (W.D. Wis. 2008). In discussing the scope of its holding, the Court said that it applies only to "the duties an employee actually is expected to perform" and not to "statements or complaints . . . that are made outside the duties of employment." *Garcetti*, 547 U.S. at 424-25. However, the Court also made clear that speech is not protected when it is "fulfilling a responsibility," when it is part of what the plaintiff was "employed to do" and when it is "work product." *Id.* at 421-22. Most cases decided by the Court of Appeals for the Seventh Circuit since *Garcetti* have resulted in dismissal as a result of a conclusion that the plaintiff was speaking as an employee rather than as a citizen. *E.g.*, *Vose v. Kliment*, 506 F.3d 565 (7th Cir. 2007); *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506 (7th Cir. 2007); *Spiegla v. Hull (Spiegla II)*, 481 F.3d 961 (7th Cir. 2007) (overruling earlier opinion because of *Garcetti*); *Mayer v. Monroe County Comm. Sch. Corp.*, 474 F.3d 477, 480 (7th Cir. 2007); *Mills v. City of Evansville, Ind.*, 452 F.3d 646 (7th Cir. 2006); *see also Haka*, 533 F. Supp. 2d at 919. "Determining what falls within the scope of an employee's duties is a practical exercise that focuses on 'the duties an employee actually is expected to perform.'" *Renken v. Gregory*, 541 F.3d 769, 774 (7th Cir. 2008) (quoting *Morales*, 494 F.3d at 596).

Plaintiff's job description stated that she was responsible for researching, developing, operating and improving the estate recovery program. Plaintiff argues that her actual duties as a collections specialist did not include filing affirmative action complaints, whistle blower

11

complaints, union grievances on behalf of herself and others or complaints to her federal and state representatives. However, practically speaking, plaintiff was complaining about matters within the scope of her job duties. *Butler v. Duckworth*, 2008 WL 5221103, * (S.D. Ill. Dec. 12, 2008) ("office backbiting or petty managers" do not implicate First Amendment; "this happens in every organization, public and private, and is best addressed by state law and collective bargaining"). The internal complaints plaintiff made to co-workers and supervisors clearly constitute speech made pursuant to her official duties. *Houskins*, 549 F.3d at 491 (finding same where corrections social worker complained to internal affairs division that corrections officer assaulted her); *Mills*, 452 F.3d at 648 (police sergeant's criticisms to her supervisors about chief's personnel decision to reduce number of officers under her command made as public employee).

Federal courts have been more likely to conclude that an employee was speaking as a citizen when the employee was addressing an audience outside his or her employer. *E.g., Morales v. Jones*, 494 F.3d 590, 598 (7th Cir. 2007) (statements made in deposition not implicated by *Garcetti*); *Freitag v. Ayers*, 468 F.3d 528, 545 (9th Cir. 2006) (complaint of correctional officer to senator and inspector general not implicated by *Garcetti*). I agree. Plaintiff's statements to Congresswoman Baldwin, Representative Miller and the Equal Rights Division (an independent state agency) were not generated in the normal course of her duties and were similar to reports filed by citizens every day. *Houskins*, 549 F.3d at 491 (citing with approval *Freitas*, 468 F.3d at 545 (right to complain to elected official and independent state agency guaranteed to any citizen regardless of status as state employee)). Accordingly, these statements pass muster under *Garcetti*.

Plaintiff's complaints to her department's employee assistance program, affirmative action office and union representatives are a closer call. In one sense, plaintiff was not speaking pursuant to a duty because she did not regularly communicate with those officials in the regular course of her duties. On the other hand, neither is it accurate to say that plaintiff was acting as just another citizen. Plaintiff has not adduced any facts showing that the employee assistance program or the affirmative action office were independent state agencies. In fact, both parties refer to those offices as being part of the department in which plaintiff worked. An argument can be made that the union is an independent entity. Also, state employees are considered private citizens when they speak as union representatives. *Fuerst v. Clarke*, 454 F.3d 770, 774 (7th Cir. 2006). However, in this case, plaintiff was reporting problems about her own job to her union, which contracted with plaintiff's employer. Even though plaintiff's grievance included concerns raised by her co-workers and eventually led to a conflict resolution meeting, plaintiff was speaking out about personnel problems within her own agency, not an abstract matter of public governance unrelated to her job.

Plaintiff believed that her supervisor acted unfairly and unreasonably in assigning her work, communicated with her in a threatening and demeaning manner and came to work hung over and smelling of alcohol. Although these are legitimate concerns for Emmerton's supervisors and subordinates, they are normal workplace grievances. "[S]tatements made in an employment setting about how the tasks should be carried out are appropriate subjects for reaction by management, without constitutional obstacles." *Taylor v. Carmouche*, 214 F.3d 788, 792 (7th Cir. 2000) (decided before *Garcetti* but applying private citizen test) (quoting *Wales v. Board of Education*, 120 F.3d 82, 84-85 (7th Cir. 1997)). Plaintiff was not discussing broad agency

13

policies, her view about the agency's organizational structure or even the fact that Emmerton's alleged impairment interfered with the agency's overall provision of services. *Id.* (noting similar distinctions). Instead, plaintiff focused on how Emmerton treated plaintiff and her coworkers on the job. *See Haka*, 533 F. Supp. 2d 895 (administrator's letter to another agency head written pursuant to official duties, even though he had no authority over the subject matter, because plaintiff concerned with effect on his own agency).

Even if an employee is not required to take a particular action, it still may be performed "pursuant to" the employee's duties. *Vose*, 506 F.3d at 570-71. The plaintiff in *Vose* was a police sergeant who supervised the narcotics unit. He complained to his supervisor that detectives in the major case unit were conducting investigations in a manner that could compromise his unit. The situation escalated over the next few months and the plaintiff's supervisor ultimately moved him to a less desirable position. After he filed a lawsuit claiming First Amendment retaliation, the court of appeals rejected his claim under *Garcetti*. Although the plaintiff said "that his official duties as supervisor of the narcotics unit did not include responsibility for investigating potential misconduct of officers in another unit," the court was not persuaded:

> Vose may have gone above and beyond his routine duties by investigating and reporting suspected misconduct in another police unit, but that does not mean that he spoke as a citizen and not as a public employee.

*Vose*, 506 F.3d at 570-571.

The same is true here. Even if plaintiff went "above and beyond her routine duties" by voicing her concerns about Emmerton, she was addressing a matter that only would affect her

employment and her agency. Accordingly, I find that *Garcetti* bars plaintiff's First Amendment claim with respect to her complaints to union representatives, the employee assistance program and the affirmative action office. However, I note that even if plaintiff's complaints could be construed as speech that she made as a private citizen, they did not involve a matter of public concern, as discussed in the next section.

In sum, I conclude that plaintiff's First Amendment claim survives *Garcetti* only to the extent that it is based on her 2005 complaints to Congresswoman Baldwin, Representative Miller and the Equal Rights Division.

### B. Public Concern

Whether a government employee's speech addresses a matter of public concern depends upon "the content, form, and context of [the speech] as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48. *See also Sullivan v. Ramirez*, 360 F.3d 692, 699 (7th Cir. 2004) (quoting same); *Gustafson v. Jones*, 290 F.3d 895, 906-07 (7th Cir. 2002) (quoting same). Content is the most important factor. *Sullivan*, 360 F.3d at 699 (citation omitted). "The 'public concern' element must relate to a community concern and is not satisfied by 'merely a personal grievance of interest only to the employee.'" *Id.* "Speech that serves a private or personal interest, as opposed to a public one, does not satisfy the standards for First Amendment protections." *Houskins*, 549 F.3d at 492 (quoting *Boyce v. Andrew*, 510 F.3d 1333, 1344 (11th Cir. 2007) ("The relevant inquiry is not whether the public would be interested in the topic of the speech at issue but rather is whether the purpose of the plaintiff's speech was to raise issues of public concern.")).

As discussed above, all of plaintiff's complaints, including her whistle blower complaint and the e-mail to Congresswoman Baldwin and Senator Miller, discussed plaintiff's difficulties with her supervisor. Plaintiff did not allege a breach of public trust or challenge the agency's policies, performance or accountability. *See Connick*, 461 U.S. at 148-49 (reaching similar conclusion and holding that "[w]hile discipline and morale in the workplace are related to an agency's efficient performance of its duties," the speech at issue reflected one employee's dissatisfaction and "an attempt to turn that displeasure into a cause celebre"). Accordingly, I find that plaintiff's speech was not a matter of public concern.

### III.  Whistle blower Claim

Wis. Stat. § 230.90 is one of Wisconsin's "whistle blower" provisions, prohibiting state employers from disciplining their employees for disclosing certain information. It provides the following:

> An employee may bring an action in circuit court against his or her employer or employer's agent, including this state, if the employer or employer's agent retaliates, by engaging in a disciplinary action, against the employee *because the employee exercised his or her rights under the first amendment to the U.S. constitution or article I, section 3, of the Wisconsin constitution* by lawfully disclosing information or because the employer or employer's agent believes the employee so exercised his or her rights.

Wis. Stat. § 230.90(2) (emphasis added). Because plaintiff fails to make out a First Amendment claim, she also fails to make out a claim under Wis. Stat. § 230.90. *Witte v. Wis. Dept. of Corrections*, 2004 WL 2202763, at *27 (W.D. Wis. Sept. 17, 2004), *aff'd*, 434 F.3d 1031 (7th Cir. 2006); *Kmetz v. State Historical Soc.*, 304 F. Supp. 2d 1108, 1141 (W.D. Wis. 2004)

(citing *Hutson v. State of Wis. Personnel Comm.*, 263 Wis.2d 612, 665 N.W.2d 212 (2003) for proposition that scope of employee's protection under whistle blower statute narrower than that afforded by First Amendment), *rev'd in part on reconsideration*, 2004 WL 298102 (W.D. Wis. Feb. 11, 2004). *See also State v. Panno*, 151 Wis. 2d 819, 830-31, 447 N.W.2d 74 (Ct. App. 1989) (looking to parameters Supreme Court placed on First Amendment in determining state constitutional claims).

ORDER

It is ORDERED that defendants' motion for summary judgment is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 26th day of January, 2009.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge